UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

LUIS SERGIO CAMACHO,

                          Plaintiff,                    22 Civ. 1156 (AEK)

          -against-                      **DECISION AND ORDER**

THE BARRIER GROUP INC., SUB
ENTERPRISES INC. d/b/a DRIP DROP
WATERPROOFING, and JOEL REICH,
as an individual,

                         Defendants.

----------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

Currently before the Court is Plaintiff's motion to enforce the settlement agreement

entered into by the parties and approved by the Court, *see* ECF No. 137-1 ("Settlement

Agreement"), and to enter judgment against Defendants The Barrier Group Inc., Sub Enterprises

Inc. d/b/a Drip Drop Waterproofing, and Joel Reich in accordance with Defendants' affidavit of

confession of judgment, *see* ECF No. 149-7 ("Confession of Judgment").  For the reasons that

follow, the motion is GRANTED.

## BACKGROUND

The lengthy history of this case—including Defendants' repeated delay tactics—has been

documented in prior decisions, *see, e.g.*, ECF No. 116, and the Court assumes the parties'

familiarity with all prior proceedings.

More than three years after this straightforward wage-and-hour action was filed, and on

the eve of a third scheduled trial date, Plaintiff and Defendants entered into a proposed

settlement agreement to resolve all of Plaintiff's claims.  The Settlement Agreement was

approved by the Court in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 496 F.3d 199

(2d Cir. 2015), on May 1, 2025.  ECF No. 139.  As part of the approval, and "[i]n accordance with the parties' intentions, as set forth [in] paragraph 3 of the [ ] Settlement Agreement," the Court retained jurisdiction "for the purpose of enforcing the terms of the [S]ettlement [A]greement."  *Id*. at 9.

The Settlement Agreement required Defendants to pay Plaintiff a total of $75,000, with payments to be made in 17 installments.  *See* Settlement Agreement ¶ 1(a).  The first installment payment of $10,000 was to be made within seven days of Court approval of the Settlement Agreement (*i.e.*, by May 8, 2025); the remaining installment payments were scheduled to be in the amount of $4,062.50 each, with the second installment to be paid within 30 days of the first payment due date, and the remaining payments to be made every 30 days thereafter until full payment was completed.  *See id.*

In addition, as part of the Settlement Agreement, Defendants agreed to execute a confession of judgment, jointly and severally, in the amount of $150,000, less 200 percent of the total amount of any payments made pursuant to the Settlement Agreement.  *See* Settlement Agreement ¶ 2(a); Confession of Judgment ¶¶ 4, 5.  The parties agreed that "in the event of a default and failure to cure such default," the Confession of Judgment would be entered, and "the amount of [the] judgment [would] be equal to 200% of the unpaid balance" of the settlement funds.  *See* Settlement Agreement ¶ 2(a); *see also id.* ¶ 2(c) (describing additional obligations of Defendants "[i]n the event of such a default and entry of such judgment"); ¶ 2(d) (providing for joint and several liability for the amount set forth in the Confession of Judgment "[s]hould the Confession of Judgment be entered under this section"); Confession of Judgment ¶ 3 (contemplating that the Confession of Judgment could be filed only if "the specific default conditions and procedural requirements set forth herein are met").  The Settlement Agreement

2

required that if Defendants defaulted on any of the contemplated payments, Plaintiff was required to provide notice by e-mail to Defendants' counsel to give Defendants an opportunity to cure the default. *Id.* ¶ 2(b).  If Defendants failed to cure the defect within 21 days, "then all settlement monies owed under [the Settlement Agreement] would "be immediately due in their entirety." *Id*.  The Settlement Agreement also recited that in the event of default and entry of judgment, Defendants would be "indebted to Plaintiff for statutory costs, reasonable attorneys' fees incurred in the process of entering and enforcing the judgment, and interest on the judgment." *Id.* ¶ 2(c); *see* Confession of Judgment ¶ 8.

Defendants failed to make the first payment required by the Settlement Agreement on May 8, 2025.  *See* ECF No. 144 at 2; ECF No. 149 (First Affirmation of Katelyn Schillaci ("Schillaci Aff.")) ¶¶ 14, 29; ECF No. 150 ("Defs. Opp.") at 5.  On May 23, 2025, Plaintiff, through counsel, and in accordance with the procedure contemplated in Paragraph 2(b) of the Settlement Agreement, notified Defendants' counsel via email regarding Defendants' default on the first payment.  *See* Schillaci Aff. ¶ 14 & Ex. 2.  Under the terms of the Settlement Agreement, Defendants had 21 days (*i.e.*, until June 13, 2025) to cure the default before "all settlement monies owned under [the Settlement Agreement]" would be "due in their entirety." Settlement Agreement ¶ 2(b).  Defendants' counsel immediately responded by email to say that she would "reach out." *See* Schillaci Aff. Ex. 3.  Plaintiff's counsel sent a second email to Defendants' counsel on May 28, 2025 to inquire about the outstanding payment, and after receiving no response, sent a third email to Defendants' counsel on May 30, 2025; in the third email, Plaintiff's counsel also indicated that she had left a voicemail message for Defendants' counsel.  *Id.* ¶¶ 15-16 & Exs. 3, 4.  In a letter submitted to the Court on May 30, 2025, Plaintiff's counsel reported that Defendants had "requested an extension to render their first installment and

a conference between counsel is scheduled for Wednesday, June 4, 2025." ECF No. 140 at 2. As part of the current motion, Plaintiff's counsel acknowledges that Plaintiff "accorded the Defendants until June 4, 2025 to make their 1st installment [payment], despite [it] being overdue." Schillaci Aff. ¶ 17. On June 27, 2025, Plaintiff's counsel sent another email to Defendants' counsel regarding the outstanding installment payment, but received no response. *Id.* ¶ 18 & Ex. 5. At this point, Defendants had not only missed the May 8, 2025 deadline for the first installment payment, but also had missed the June 7, 2025 deadline for the second installment payment of $4,062.50. *See id.* ¶ 12[1]; Settlement Agreement ¶ 1(a)(ii).

On July 8, 2025, Defendants sent two checks, dated July 2, 2025, totaling $10,000 to Plaintiff's counsel, but Plaintiff's counsel refused to accept the past-due payment of the first installment, and instead destroyed the checks. *See* Schillaci Aff. ¶ 21. Plaintiff's counsel advised Defendants' counsel that Defendants had until July 22, 2025 to pay the full $75,000 to which Plaintiff believed he was entitled under Paragraph 2(b) of the Settlement Agreement as a result of Defendants' default, or else Plaintiff's counsel would move to enforce a judgment against Defendants. *See id.* Defendants did not tender any payments thereafter, and Plaintiff filed the instant motion on July 22, 2025. *See id.* ¶ 22; ECF No. 144. Defendants submitted their initial response on August 5, 2025. ECF No. 146.

The Court issued an initial Decision and Order in response to the motion on August 6, 2025, which explained that as of that date, under the Settlement Agreement, Defendants should

---

[1] The chart in this paragraph of the Schillaci Affirmation suggests that the second installment payment was due on June 8, 2025. Thirty days from May 8, 2025 is June 7, 2025, which is why the Court views June 7, 2025 as the deadline contemplated by the Settlement Agreement, even though June 7, 2025 was a Sunday. Regardless, Defendants did not make the second installment payment at any time, and that payment—as well as numerous other installment payments that have not been made—is long overdue.

have paid $22,187.50 to Plaintiff.  ECF No. 147.  The Court scheduled a conference for August

14, 2025, and provided a roadmap to a potential compromise if Defendants were willing to make

a lump sum "catch up" payment to cure their defaults up until that point.  *Id.* at 2-3.  This

concept was suggested in part because of Defendants' representation, in their initial opposition

submission, that they "remain[ed] committed to performing under the Agreement."  ECF No.

146 at 2.  In advance of the conference, Defendants' counsel notified the Court that Defendants

would not be able to make the "catch up" payment by the August 15, 2025 deadline suggested by

the Court, *see* ECF No. 148, and at the conference, Defendants could not provide a firm date by

which they could pay the $22,187.50 that was outstanding at that time.

Pursuant to the schedule set at the August 14, 2025 conference, Plaintiff filed a further

submission in support of his motion on August 21, 2025, ECF No. 149; Defendants filed a

further response on August 28, 2025, ECF No. 150; and Plaintiff filed a reply on September 4,

2025, ECF No. 151.

**DISCUSSION**

Plaintiff contends that the Court should enter judgment against Defendants in accordance

with the Confession of Judgment because Defendants have defaulted on their obligations under

the Settlement Agreement, and because Plaintiff has satisfied all of the conditions required to

have judgment entered in his favor.  The Court agrees.

**I.       Applicable Legal Standards**

"Judgment by confession is a product of state law, having no analog in the federal rules."

*Xerox Corp. v. W. Coast Litho, Inc.*, 251 F. Supp. 3d 534, 537 (W.D.N.Y. 2017) (quotation

marks omitted).  "The Federal Rules of Civil Procedure do not contain any specific provisions

that govern entry of judgment by confession.  Nevertheless, a federal court has the power and

5

authority to enter a judgment pursuant to a confession of judgment as long as subject-matter jurisdiction exists and the confession of judgment was voluntarily, knowingly and intelligently made." *Id.* at 537-38 (cleaned up) (collecting cases).

New York law provides that "'a judgment by confession may be entered . . . either for money due or to become due . . . upon an affidavit executed by the defendant." N.Y. Civil Practice Law and Rules ("C.P.L.R.") § 3218(a); *see Xerox Corp.*, 251 F. Supp. 3d at 538. A defendant's affidavit of confession of judgment must contain certain information. *See id.* In circumstances like the ones presented here, it must state "the sum for which judgment may be entered, authoriz[e] the entry of judgment, and stat[e] the county where the defendant resides . . . ." C.P.L.R. § 3218(a)(1). And where, as here, "the judgment to be confessed is for money due or to become due," the affidavit must state "concisely the facts out of which the debt arose and show[ ] that the sum confessed is justly due or to become due." C.P.L.R. § 3218(a)(2).[2]

## II.   Analysis

### A.   Subject Matter Jurisdiction and Compliance with the Requirements of the C.P.L.R.

There is no question that all of the threshold conditions required for the Court to enter a judgment pursuant to the Confession of Judgment have been satisfied. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331—the case presents a federal question because Plaintiff's first cause of action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. See* ECF No. 1. In addition, the Court has, since the

---

[2] A third requirement of C.P.L.R. § 3218 pertains to circumstances where "the judgment to be confessed is for the purpose of securing the plaintiff against a contingent liability." That provision is inapplicable here. *See* Confession of Judgment ¶ 9 ("This Confession of Judgment is not for the purpose of securing the Plaintiff against a contingent liability, nor is it based upon a consumer credit transaction.").

inception of this litigation, exercised supplemental jurisdiction over Plaintiff's claims under the New York Labor Law ("NYLL"), as those claims "form part of the same case of controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Defendants have never disputed that the Court has subject matter jurisdiction over this action. *See* Settlement Agreement ¶ 3; ECF No. 139 at 9.

It is also clear that the Confession of Judgment was voluntarily, knowingly, and intelligently made. On the eve of trial, Mr. Reich signed the Confession of Judgment on behalf of himself and the corporate defendants as part of the Settlement Agreement, which was negotiated with the assistance of counsel who had been representing Defendants in this matter for approximately 17 months at that point. *See* ECF No. 80 (notice of appearance). In their opposition to the instant motion, Defendants do not dispute that the Confession of Judgment was voluntarily, knowingly, and intelligently made. *See* ECF Nos. 146, 150.

Finally, the Confession of Judgment includes all of the information required under the C.P.L.R. The document specifies the sum for which judgment may be entered ($150,000, less 200 percent of any amounts previously paid in accordance with the Settlement Agreement), *see* Confession of Judgment ¶¶ 4, 5, 7, authorizes the filing of the Confession of Judgment upon the satisfaction of various conditions, *see id.* ¶¶ 7, 10, and states where Defendant Reich resides, *see id.* ¶ 2.[3] In addition, the Confession of Judgment includes a concise statement of the facts out of which the debt arose, and explains how the sum confessed can become due. *See id.* ¶¶ 6, 7.

---

[3] Paragraph 2 of the Confession of Judgment provides Mr. Reich's exact residence address. While that paragraph does not recite that Monroe, New York (zip code 10950) is located in Orange County, the Court can take judicial notice of this fact, and the specific address information is sufficient to satisfy the C.P.L.R. requirement to provide the county of residence.

Again, Defendants do not dispute that the Confession of Judgment contains all of the information required under the C.P.L.R.  *See* ECF Nos. 146, 150.

**B.    Compliance with the Conditions Precedent in the Settlement Agreement**

The Settlement Agreement sets forth conditions precedent that must occur before Plaintiff may seek entry of judgment based the Settlement Agreement and the Confession of Judgment.  These conditions also are expressly incorporated in the Confession of Judgment.  *See* Confession of Judgment ¶ 4.  Specifically, the Confession of Judgment may only be enforced if (a) Defendants fail to make payments in accordance with the agreed schedule; (b) Plaintiff provides written notice of the default via email to Defendants' counsel, allowing a 21-day period to cure the defect after receipt of the notice; and (c) if the default is not cured within 21 days, Plaintiff obtains a court order confirming the default and authorizing the filing of the Confession of Judgment.  The record before the Court establishes that Plaintiff has satisfied all of these conditions.

Defendants' first payment under the Settlement Agreement, in the amount of $10,000, was due on May 8, 2025, seven days following Court approval of the Settlement Agreement. *See* Settlement Agreement ¶ 1(a)(i); ECF No. 139.  Defendants did not make the first payment on the due date, and thus were in default of their obligations.  On May 23, 2025, Plaintiff, through counsel, notified Defendants' counsel via email regarding Defendants' default on the first payment.  *See* Schillaci Aff. ¶ 14 & Ex. 2.  Under the terms of the Settlement Agreement, Defendants had 21 days (*i.e.*, until June 13, 2025) to cure the default before "all settlement monies owned under [the Settlement Agreement]" would be "due in their entirety."  Settlement Agreement ¶ 2(b).  While there were various communications between counsel after the initial notification of the default on May 23, 2025, there is no indication that Plaintiff withdrew the

notification of default. *See* Schillaci Aff. ¶¶ 15-18 & Exs. 3, 4, 5. Indeed, there is no procedure in the Settlement Agreement that contemplates such a withdrawal, or an extension of the cure period because Plaintiff expresses a willingness to consider an extension of the payment deadlines. By the time Defendants attempted to make the first installment payment on July 8, 2025, *see* Schillaci Aff. ¶ 21, they had already missed the second installment payment deadline, and were more than three weeks past the deadline to cure their default on the first payment. There is nothing in the Settlement Agreement that required Plaintiff to accept Defendants' belated effort to make their first payment. Even then, Plaintiff offered a final opportunity to resolve the matter without seeking entry of judgment, but Defendants did not act on that offer. *See id.* ¶¶ 21-22. Put simply, Defendants did not meet their obligations under the Settlement Agreement, and Plaintiff has opted to exercise his rights under the agreement to seek all monies owed to him based on Defendants' default. The fact that Defendants were again unwilling or unable to make a catch-up payment in August 2025, at the Court's suggestion, to cover all of the payments that should have been made up until that point provides a clear illustration of why Plaintiff has chosen to pursue his remedies under the Settlement Agreement rather than continue to chase Defendants to hold them to their promises.

In sum, Defendants failed to make their first payment (or any subsequent payment) in accordance with the agreed schedule. Plaintiff provided written notice of the default on the first payment via email to Defendants' counsel to initiate the 21-day cure period, and Defendants failed to cure the default within the 21-day window. And now, via this motion, Plaintiff has sought a court order confirming the default and authorizing the filing of the Confession of Judgment. Plaintiff, therefore, has satisfied all of the conditions for seeking entry of judgment in accordance with the Settlement Agreement and the Confession of Judgment.

Defendants' arguments to the contrary are unavailing.  First, in their opposition brief, they invoke the Second Circuit's decision in *Doyle v. UBS Financial Services, Inc.*, 144 F.4th 122 (2d Cir. 2025), for the proposition that Plaintiff waived his right to invoke the provisions of the Settlement Agreement regarding entry of judgment because Plaintiff's counsel continued to negotiate with Defendants' counsel regarding a potential cure payment after providing notice of Defendants' default.  Defs. Opp. at 6-7.  *Doyle* addresses the legal standard applicable in the very specific context of when a party waives the right to pursue *arbitration* by acting inconsistently with that right—specifically, in that case, by participating in litigation and materially delaying a demand for arbitration to which a party may have been entitled.  *Doyle*, 144 F.4th at 124, 126.  As an initial matter, *Doyle* is plainly inapplicable because there is no issue regarding an arbitration clause here, and the entire extensive legal framework underlying the *Doyle* decision has no relevance to this issues in this motion.  And in any event, nothing that Plaintiff did here was inconsistent with the notion of him invoking his rights under the Settlement Agreement and seeking to recover the monies that Defendants had promised to pay him.  In an effort to prompt Defendants to make the payment they were obligated to make, Plaintiff took the step required of him in the Settlement Agreement—he notified Defendants' counsel of Defendants' default.  From there, Plaintiff's counsel continued to engage with Defendants' counsel to press for a response, and even left the door open to later payment if that meant that Plaintiff would be fully compensated; this was entirely in line with Plaintiff's only objective—to be paid the outstanding settlement amount.  It would defy logic to conclude that Plaintiff had acted inconsistently with his right to receive accelerated payments from Defendants, plus penalties for non-payment, by granting additional forbearance to Defendants in the hope of receiving more prompt payments of the original settlement amounts.  Defendants had no right to any forbearance from Plaintiff under

the Settlement Agreement, other than the 21-day cure period from the time Defendants' counsel was notified of the default.  Defendants also suggest that they relied on the fact that Plaintiff did not seek judicial intervention to enforce the Settlement Agreement *sooner*—again seeking to benefit from Plaintiff's considered decision to attempt to find a resolution short of further litigation.  Defs. Opp. at 6-7.  In essence, Defendants seek to punish Plaintiff for expressing a willingness to be flexible and then withdrawing that flexibility when Defendants repeatedly failed to make good on their promises.  That would be a perverse outcome.  Because none of Plaintiff's actions in May, June, and July 2025 were inconsistent with the objective of receiving payment under the Settlement Agreement and exercising his rights under that agreement, the Court rejects Defendants' arguments based on the *Doyle* decision.

Second, Defendants contend that Plaintiff's counsel's multiple communications in May and June 2025 did not constitute a single clear notice that unambiguously triggered the 21-day cure period.  Defs. Opp. at 8.  This argument is meritless.  Plaintiff's counsel's May 23, 2025 e-mail to Defendants' counsel stated that counsel "haven't received the checks from your client," and made clear that if the payment was not received by the following week, Plaintiff would have to "move to re-open the case and enforce the settlement."  Schillaci Aff. Ex. 2.  This correspondence was more than sufficient to put Defendants on notice of their default and the possible consequences for failure to cure the default.  While the May 23, 2025 message did not specifically reference the 21-day cure period set forth in the Settlement Agreement, there was no requirement that it do so.  Paragraph 2.b of the Settlement Agreement provides that notice be sent to defense counsel (which it was) and that if Defendants do not cure the defect within 21 calendar days (which they did not), "then all settlement monies owed under [the Settlement Agreement] shall be immediately due in their entirety."  There was no reasonable basis for

11

Defendants to conclude that subsequent communications inquiring about whether the payments—and trying, in vain, to get Defendants' counsel to commit to a date by which payments would be made—would reset the 21-day cure period.  To reach such a conclusion would be to reward Defendants for their intransigence and to penalize Plaintiff and his counsel for his efforts to attempt to resolve this dispute without having to seek judicial intervention.

\* \* \* \* \* \* \* \* \* \* \*

Based on the foregoing, Plaintiff is entitled to entry of judgment against Defendants based on the Confession of Judgment in the amount of $150,000.  As specifically contemplated by the Settlement Agreement and the Confession of Judgment, the judgment in favor of Plaintiff also will include "statutory costs, reasonable attorneys' fees incurred in the process of entering and enforcing the judgment, and interest on the judgment," and will specify that Defendants will be jointly and severally liable for the judgment amount.  Settlement Agreement ¶¶ 2(c), 2(d); Confession of Judgment ¶ 8.  In addition, an award of post-judgment interest under 28 U.S.C. § 1961(a) is "mandatory."  *Singh v. Meadow Hill Mobile Inc.*, No. 20-cv-3853 (CS) (AEK), 2021 WL 3862665, at *14 (S.D.N.Y. Aug. 29, 2021).

In the proposed judgment submitted with the motion, Plaintiff also seeks to have the Court impose a 15 percent "penalty increase" if the full judgment amount is not paid within 90 days.  *See* ECF No. 149-6 at 4.  Section 198(4) of the NYLL states that any judgment awarding remedies under that section "shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  But because the Settlement Agreement does not distinguish between damages for Plaintiff's claims under the FLSA and damages for his claims

12

under the NYLL, it is not clear how this provision could be applied, given that "[t]he increase applies only to damages awarded under state law." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-cv-2180 (AMD) (PK), 2022 WL 1018791, at \*14 (E.D.N.Y. Mar. 16, 2022), *adopted by*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).  Accordingly, even though § 198(4) uses mandatory language—providing that any judgment "*shall provide*" for the penalty—there is no non-speculative way to apply this statutory provision here.  Moreover, neither the Settlement Agreement nor the Confession of Judgment reference the § 198(4) penalty, and the entire construct of the Confession of Judgment *already* operates as a significant penalty by doubling the amount of the settlement amount that is immediately due and payable to Plaintiff based on Defendant's default.  *See Romero v. New Blue Flowers Gourmet Corp.*, No. 16-cv-8753 (DF), 2021 WL 860986, at \*4 (S.D.N.Y. Mar. 8, 2021) (declining to include language regarding the § 198(4) penalty in judgment entered based on motion to enforce settlement agreement).  The Court therefore will not include the § 198(4) language in the judgment.

**CONCLUSION**

For the reasons set forth above, the Court confirms that Defendants have defaulted on their obligations under the Settlement Agreement, and that Plaintiff has satisfied all conditions for the entry of judgment against Defendants in accordance with the Confession of Judgement.  Accordingly, Plaintiffs' motion to enforce the Settlement Agreement and to enter judgment against Defendants (ECF No. 144) is GRANTED.

A judgment in favor of Plaintiff and against Defendants will be docketed separately.

Dated: January 27, 2026
      White Plains, New York

                                       **SO ORDERED.**

                                       ANDREW E. KRAUSE
                                       United States Magistrate Judge